# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| PETER PAYNE; MARY BETH PAYNE; DAVID HOWARD; OKSANA HOWARD; MELVIN HARRIS; CHRISTINA CHILDERS; and DONNA HARRIS | **PLAINTIFFS** |
| v. | **CAUSE NO. 4:15CV246-LG-CMC** |
| UNITED STATES OF AMERICA; JOHN McHUGH, Secretary of the United States Army; UNITED STATES ARMY CORPS OF ENGINEERS; CRAIG FUGATE, Administrator of the Federal Emergency Management Agency; FEDERAL EMERGENCY MANAGEMENT AGENCY; GCS TRAILS OF FRISCO, d/b/a Golf Club of Frisco; SUN DEN FRISCO INVESTMENT LP, d/b/a GOLF CLUB OF FRISCO; HIGHLAND HOMES, LLC; CITY OF LITTLE ELM, TEXAS; CITY OF FRISCO, TEXAS | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTIONS TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS

**BEFORE THE COURT** are the Motion to Dismiss [70] filed by the City of

Little Elm, the Motion for Judgment on the Pleadings [71] filed by Highland

Homes,[1] and the Motion to Dismiss [82] filed by the City of Frisco. All of the

Motions have been fully briefed by the parties. After reviewing the submissions of

the parties, the record in this matter, and the applicable law, the Court finds that

---

[1] The plaintiffs' request for the Court to order Highland Homes to specify whether it has filed its Motion pursuant to Fed. R. Civ.P. 12(b)(6) or Fed. R. Civ. P. 12(c) is denied. The Motion is clearly a Rule 12(c) Motion; furthermore, the same standards apply for deciding Rule 12(c) Motions and Rule 12(b)(6) Motions. *Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 417 (5th Cir. 2008)).

the defendants' Motions should be granted.

## BACKGROUND

The plaintiffs, who live in Little Elm, Texas, have sued numerous defendants including Frisco, Highland Homes, and Little Elm, claiming that the area behind their homes frequently floods, causing erosion that negatively impacts their properties. Since Highland Homes and Frisco assert the doctrine of res judicata in their pending Motions and since the plaintiffs have attempted to assert a federal takings claim against Little Elm that must first be exhausted in state court, it is necessary to discuss the procedural history of a previous lawsuit filed by these plaintiffs.

## I. THE PLAINTIFFS' 2011 LAWSUIT

On June 23, 2011, Peter Payne, Mary Beth Payne, David Howard, and Oksana Howard (hereafter collectively referred to as "the Payne-Howard plaintiffs") filed a lawsuit in state court against Highland Homes and others, alleging violation of the Texas Water Code, negligence per se, negligence, and breach of warranties, because they claimed that Highland Homes and the other defendants failed to protect them from erosion caused by flooding in Cottonwood Creek. (Original State Ct. Pet., ECF No. 71-1).[2] On October 31, 2011, an amended petition was filed in

_____

[2] The plaintiffs' request to convert the Highland Homes' Motion to a motion for summary judgment due to the attachment of pleadings from the state court action is denied. While reviewing a motion to dismiss, courts may take judicial notice of court pleadings in other cases, because pleadings are public records. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

state court that named new plaintiffs: Melvin Harris, Donna Harris, and Christina Childers ("the Harris-Childers plaintiffs"). (1st Am. State Ct. Pet., ECF No. 71-1). The First Amended Petition also contained the following new claims against Highland Homes: breach of contract, violation of the Texas Deceptive Trade Practices and Consumer Protection Act, fraud and fraud in the inducement, fraud in real estate transaction, unconscionable/knowing conduct, gross negligence, fraud in a real estate transaction, rescission, and infliction of mental anguish. (*Id.*)

On March 20, 2012, the state court entered an order granting Highland Homes summary judgment as to all of the claims filed by the Harris-Childers plaintiffs. (Order Granting Partial Summ. J., ECF No. 71-5). The court also dismissed the Texas Water Code claims filed against Highland Homes by the Payne-Howard plaintiffs. (*Id.*) When the state court denied a motion to reconsider filed by the plaintiffs, it severed the Harris-Childers plaintiffs' claims against Highland Homes into a separate lawsuit. (Order Den. Recons., ECF No. 71-5). It further held that the order granting Highland Homes summary judgment constituted a final, appealable order. (*Id.*)

Highland filed another Motion for Summary Judgment as to the Payne-Howard plaintiffs' remaining claims on September 24, 2013. (2d Mot. for Summ. J., ECF No. 71-6). That Motion was granted on November 25, 2013. (Order Granting 2d Mot. for Summ. J., ECF No. 71-7). The plaintiffs appealed the dismissal of their claims against Highland Homes. On December 18, 2014, the Texas Court of Appeals dismissed the Harris-Childers plaintiffs' appeal as untimely, but it held

that the Payne-Howard plaintiffs' appeal was timely filed. (Mem. Op. & Order, ECF No. 71-8). It appears that the Payne-Howard plaintiffs' appeal remains pending before the Texas Court of Appeals.

Prior to the dismissal of the plaintiffs' claims against Highland Homes, the plaintiffs filed a Third Amended Petition naming Frisco as a defendant. (3d Am. State Ct. Pet., ECF No. 71-3). The plaintiffs claimed in that petition that Frisco was "responsible for the construction and/or design and/or maintenance and/or approval of . . . the use of a storm sewer . . . located in the flood plain in question." (*Id.* at 4). The plaintiffs asserted that this storm sewer diverted the surface waters that had damaged their properties. (*Id.*) As a result, they alleged the following claims against Frisco: violation of the Texas Water Code, negligence per se, and negligence. (*Id.*) On October 8, 2012, the plaintiffs filed a Fourth Amended Petition asserting a claim for an unconstitutional taking and a nuisance claim against Frisco. (4th Am. Pet. at 13-17, ECF No. 82-8). Frisco filed a plea to the jurisdiction, which was granted by the state court on April 29, 2013. (Order Dismissing Frisco, ECF No. 82-9). Therefore, all of the plaintiffs' claims against Frisco were dismissed with prejudice for lack of jurisdiction. (*Id.*)

On July 26, 2013, the plaintiffs appealed the interlocutory order that dismissed their claims against Frisco. (Notice of Appeal, ECF No. 82-10). The Texas Court of Appeals dismissed that appeal for lack of jurisdiction on September 19, 2013. (J., ECF No. 82-11). The plaintiffs again appealed the dismissal of Frisco on December 13, 2013. (2d Notice of Appeal, ECF No. 82-13). The plaintiffs

claimed that the dismissal of all of their claims against Highland Homes had converted the order that dismissed Frisco into a final, appealable order. (*Id.*) On October 9, 2014, the Court of Appeals granted the plaintiffs' motion seeking to voluntarily dismiss their appeal against Frisco. (Mem. Op. & J., ECF No. 82-16).

On May 11, 2014, the plaintiffs filed a Sixth Amended Petition in the cause number that had been assigned to the dismissed claims of the Harris-Childers plaintiffs. (6th Am. Pet., ECF No. 82-18). The petition named both the Payne-Howard plaintiffs and the Harris-Childers plaintiffs as plaintiffs, and Highland Homes, Frisco, and Little Elm as defendants.[3] The golf club that owns the property behind the plaintiffs' homes, the United States of America, and several United States agencies and employees were also listed as defendants. The plaintiffs once again asserted claims for damages allegedly caused by the erosion of the soil providing lateral support for the plaintiffs' properties. They claimed that Frisco and Little Elm had violated the Clean Water Act and the takings clause of the Texas Constitution. They also reasserted all of their claims against Highland Homes that had previously been dismissed with prejudice. The United States defendants removed the case to federal court. (Notice of Removal, ECF No. 71-10). The case was then remanded to state court for a determination whether the Sixth Amended

---

[3] It appears that this may have been the first time that Little Elm was listed as a defendant, but it is unclear from the pleadings provided to the Court. The plaintiffs had previously sued a company named LittleElm/2000, Ltd., that the plaintiffs referred to as "Little Elm" in prior amendments, but the Court has not located a prior reference to the City of Little Elm in the plaintiffs' numerous amended petitions.

Petition was a deficient, void pleading due to the plaintiffs' alleged violation of a scheduling order and failure to seek and obtain leave of court before filing the Sixth Amended Petition. (Mem. Op. & Order, ECF No. 82-20; Mem. Adopting Report & Recommendation, ECF No. 82-21). After the case was remanded, the plaintiffs voluntarily dismissed their claims against Frisco, Little Elm, the golf club, and the United States defendants. (Notice of Nonsuit, ECF No. 82-22).

## II. THE PRESENT LAWSUIT

In the present lawsuit, the plaintiffs claim that Highland Homes knowingly built their homes on lots that were laterally supported by the banks of the Cottonwood Creek tributary, which is located in a one hundred year flood plain and is filled with water seasonally upon rainfall. (1st Am. Compl. at 12-13, ECF No. 3). The plaintiffs also claim that when Highland Homes built other subdivisions upstream from the tributary it constructed concrete surfaces and retaining walls that have adversely affected the flood plain behind the plaintiffs' property. (*Id.* at 16).

The plaintiffs further claim that Frisco approved the design of a storm water culvert that directs storm water toward the soil in the flood plain that provides lateral support for the plaintiffs' properties. (*Id.* at 11, 17). The plaintiffs claim that the culvert has also adversely affected the flood plain and accelerated the erosion of soil supporting their property. (*Id.*)

The plaintiffs allege that consulting engineers have informed the defendant Little Elm, Texas, that armored retaining walls are necessary to prevent further

erosion, but Little Elm has not constructed retaining walls. (*Id.* at 18-19). The plaintiffs also generally allege that Little Elm and Frisco have failed to properly maintain and manage the flood plain at issue. (*Id.* at 12). The plaintiffs also sued a golf club that owns property behind the plaintiffs' properties, the United States of America, and several United States agencies and employees.

The plaintiffs' First Amended Complaint attempts to assert the following claims: (1) a claim for negligent management of the flood plain filed against Little Elm and Frisco; (2) a takings claim filed pursuant to the United States Constitution and the Texas Constitution against Little Elm and Frisco; (3) a state-created danger claim against Little Elm and Frisco; (4) a claim for negligent maintenance of the flood plain filed against the United States Army Corps of Engineers, FEMA, Frisco, and Little Elm; (5) a state law nuisance claim filed against all defendants; (6) a demand for declaratory relief; and (7) Clean Water Act claims filed against Highland Homes, the golf club, Frisco, and Little Elm.

On August 17, 2015, this Court entered three Memorandum Opinions and Orders [58, 59, 60] dismissing all of the plaintiffs' claims against the golf club and the United States defendants without prejudice, as well as the plaintiffs' Clean Water Act Claims filed against Highland Homes. Highland Homes, Little Elm, and Frisco now seek dismissal of all of the remaining claims pending in this lawsuit.

## DISCUSSION

The defendants raise multiple grounds for dismissal, but the Court must first address the defendants' arguments that the plaintiffs do not have standing to file

this lawsuit.  *See Willoughby v. United States of America*, 730 F.3d 476, 479 (5th

Cir. 2013).[4]

## I.  STANDING

The Fifth Circuit has explained:

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies."  The doctrine of standing provides a definition to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process.  The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.

*Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015) (internal quotations and

citations omitted).  In order to establish standing, a "plaintiff must have suffered an

injury in fact – an invasion of a legally protected interest which is (a) concrete and

particularized . . . and (b) actual or imminent, not conjectural or hypothetical."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and

quotation marks omitted).  "Second, there must be a causal connection between the

injury and the conduct complained of – the injury has to be fairly . . . traceable to

the challenged action of the defendant, and not the result of the independent action

of some third party not before the court."  *Id.*  "Third, it must be likely, as opposed

to merely speculative, that the injury will be redressed by a favorable decision."  *Id.*

at 561.  "At the pleading stage, general factual allegations of injury resulting from

the defendant's conduct may suffice, for on a motion to dismiss we presume that

---

[4] Only Little Elm and Frisco allege lack of standing in their Motions; Highland Homes did not address standing in its Motion.

-8-

general allegations embrace those specific facts that are necessary to support the claim." *Id.* "A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). "Allegations of possible future injury do not satisfy the requirements of Art[icle] III." *Id.*

The defendants argue that all three required elements of standing are lacking in the present case. In their First Amended Complaint, the plaintiffs claim that the defendants' actions and inactions have caused flooding that "has accelerated the erosion of soils providing lateral support to Plaintiffs' Properties, and continues at each rainfall to erode the soils providing lateral support to Plaintiffs' Properties, such that within the last two years, the soil beneath Plaintiffs' Properties has been adversely affected." (1st Am. Compl. at 12, ECF No. 3). They further allege that the erosion has "compromised the structural integrity of the supporting soils of Plaintiffs' homes and greatly reduced the market value of each of Plaintiffs' homes." (*Id.* at 19). They explain that they will experience loss when they "are forced to disclose the continued and unaddressed erosion of the soils providing lateral support to Plaintiffs['] Properties." (*Id.* at 22). In addition, they express concern that "a complete loss of Plaintiffs['] homes is possible if the soil providing lateral support fails causing Plaintiffs' homes to slide down the hillside into the Floodplain." (*Id.*) The plaintiffs also allege that the defendants' alleged actions have caused the plaintiffs to suffer "great physical and mental pain, suffering and anguish." (*Id.* at 28). The plaintiffs seek actual, punitive, and

statutory damages, as well as declaratory relief, attorneys' fees, prejudgment interest, and post-judgment interest.  (*Id.* at 29).

Although portions of the plaintiffs' Amended Complaint are vague, the Court finds that the plaintiffs have satisfied the minimal requirements of standing at this stage of the litigation.  While the plaintiffs at times discuss speculative injuries that may arise in the future, they also allege that their properties have already been damaged.  The plaintiffs further allege that those injuries were caused by the defendants' actions in allegedly directing water toward the soil supporting their property and otherwise failing to manage the flood plain.  Finally, an award of damages would likely redress these injuries by compensating the plaintiffs for their alleged losses and providing funds to build retaining walls or other structures that may prevent future damage.

## II. RES JUDICATA

Frisco and Highland Homes argue that this lawsuit is barred by the doctrine of res judicata.  "A federal court, asked to give res judicata effect to a state court judgment, must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation."  *Hernandez v. City of Lafayette*, 699 F.2d 734, 736 (5th Cir. 1983).  Under Texas law, "[r]es judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit."  *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992).

> The party relying on the affirmative defense of res judicata must prove
> (1) a prior final determination on the merits by a court of competent
> jurisdiction; (2) identity of parties or those in privity with them; and
> (3) a second action based on the same claims as were or could have
> been raised in the first action.

*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

In the present case, it is undisputed that the plaintiffs' claims against Frisco and Highland Homes were dismissed with prejudice in the state court lawsuit. The Texas Court of Appeals dismissed the appeals that all of the plaintiffs filed as to Frisco and the appeal that the Harris-Childers plaintiffs filed as to Highland Homes. The appeal filed by the Payne-Howard plaintiffs as to Highland Homes remains pending; however, under Texas law, a judgment is considered final for the purposes of res judicata even when the judgment is the subject of an appeal. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986). Therefore, the Payne-Howard plaintiffs' pending appeal does not affect the preclusive effect of the state court judgment in favor of Highland Homes.

Furthermore, the fact that the plaintiffs' claims against Frisco were dismissed for lack of subject matter jurisdiction on the basis of governmental immunity does not affect the preclusive effect of the state court's dismissal with prejudice in favor of Frisco. *See Carrasco v. City of Bryan*, 515 F. App'x 325, 326 (5th Cir. 2013) (per curiam) (holding that, under Texas law, a dismissal with prejudice due to governmental immunity constitutes a final judgment for purposes of res judicata); *see also Sims v. City of Madisonville*, No. H-14-2145, 2015 WL 4040575, at *3-5 (S.D. Tex. July 1, 2015). Since the parties were the same and

Frisco and Highland Homes obtained final judgments with preclusive effect, the first two elements of res judicata are satisfied in the present case.

As for the third element, the Texas courts apply a "transactional approach" to determine whether the second action is based on the same claims that were or could have been raised in the first action. *Hill v. Tx-An Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 424 (Tex. App. 2014). Whether the claims arise from the same transaction is determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form convenient trial units, and whether their treatment as a trial unit conforms with the parties' expectations or business understanding or usage." *Id.* at 425. Claims that arise from the same operative facts "form a convenient trial unit" and "their treatment as a trial unit conforms with the parties' expectations." *Id.* at 426. Therefore, "[t]he main concern is whether the cases share the same nucleus of operative facts." *Thompson v. Weaver*, 429 S.W.3d 897, 902 (Tex. App. 2014).

The plaintiffs argue that the doctrine of res judicata should not be applied, because their claims are "continuing." They claim that the defendants "continue[] to ignore that [their] actions/inactions have an adverse affect [sic] upon Plaintiffs' property every time it rains." (Pls.' Resp. at 7, ECF No. 79; *see also* Pls.' Resp. at 9, ECF No. 9). They further assert that "[p]rior rulings on summary judgment are not effective as to the actions/inactions that continue to occur every rainfall and damage Plaintiffs' property." (*Id.*) The plaintiffs have not identified any legal authority

that supports their assertion that res judicata does not apply to cases where the plaintiffs allege that their damages are continuing to accrue. In both the 2011 lawsuit and the present lawsuit, the plaintiffs have alleged that Highland Homes built their homes and upstream subdivisions in such a way that subjects the plaintiffs' properties to erosion. They also alleged in both lawsuits that Frisco constructed a storm drain or culvert that directs storm water toward the land supporting their properties and that Frisco has failed to remedy the alleged problem. Therefore, both lawsuits arose out of the same nucleus of operative facts, and the third element of res judicata is satisfied.

The plaintiffs' apparent argument that, because they claim to suffer damages every time it rains, they should be able to file new lawsuits regardless of how many judgments are awarded in favor of the defendants is completely without merit and would result in litigation that would presumably never end. The present case is an excellent demonstration of the necessity of the doctrine of res judicata. *See Barr*, 837 S.W.2d at 629 ("The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery.") All of the plaintiffs' claims against Frisco and Highland Homes in the present lawsuit could have been raised in the state court lawsuit.[5] Therefore, the plaintiffs' claims

---

[5] Even the plaintiffs' federal taking claim against Frisco, which was not raised or reserved in the state court lawsuit, is barred by the doctrine of res judicata. *See generally Guetersloh v. State*, 930 S.W.2d 284 (Tex. Ct. App. 1996).

against these two defendants must be dismissed with prejudice pursuant to the doctrine of res judicata.[6]

## III. GOVERNMENTAL IMMUNITY AS TO LITTLE ELM

In its Motion to Dismiss, Little Elm argues that the plaintiffs' negligence, nuisance, and takings claims should be dismissed pursuant to the doctrine of governmental immunity. The Court will address each of these claims separately.

### A. NEGLIGENCE CLAIMS

A state's political subdivisions, such as municipalities and counties, are immune from lawsuits and liability unless the state waives its immunity. *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 926-27 (Tex. 2015). The Texas Tort Claims Act (TTCA) provides a limited waiver of governmental immunity. *Id.* at 927. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215 lists governmental functions for which a municipality may be held liable under the TTCA, but Section 101.0215 "does not provide an independent basis for a waiver of governmental immunity." *Sanders v. City of Grapevine*, 218 S.W.3d 772, 778 (Tex. App. 2007). "[F]or a city to be subject to suit and liability for conduct falling within the list of governmental functions in Section 101.0215, the conduct must also fall

_____

[6] Highland Homes has not asked the Court to amend its prior opinion [60] granting Highland Homes' Motion seeking dismissal of the plaintiffs' Clean Water Act claim without prejudice. Therefore, the Court will not amend that order to provide for dismissal with prejudice pursuant to the doctrine of res judicata. The plaintiffs' Clean Water Act claim against Frisco is dismissed with prejudice pursuant to the doctrine of res judicata, because that claim arose out of the same subject matter as the current lawsuit and it could have been raised in the prior lawsuit.

within one of the three general areas for which immunity from liability and suit is waived under the Act." *Id.* The TTCA waives sovereign immunity for (1) property damage, personal injury, or death that "arises from the operation or use of a motor-driven vehicle or motor-driven equipment," (2) personal injury and death "caused by a condition or use of tangible personal or real property," and (3) claims that arise out of intentional torts. Tex. Civ. Prac. & Rem. Code Ann. § 101.021, § 101.057(2). Therefore, the only way in which a plaintiff can recover for property damage resulting from a negligent act committed by a municipality is by demonstrating that the damages were caused by use of a motor vehicle or other motor-drive equipment. *See id.*

This Court will first determine whether the alleged conduct by Little Elm constitutes a governmental or proprietary function. In their First Amended Complaint, the plaintiffs allege that Little Elm has mismanaged the flood plain behind the plaintiffs' property in such a way that storm water floods and erodes the land supporting their homes. (1st Am. Compl. at 18, ECF No. 3). Section 101.0215 of the TTCA provides that engineering functions, zoning, planning, and plat approval, and maintenance of storm sewers constitute governmental functions. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(9),(29),(30). Therefore, the conduct alleged in the plaintiffs' First Amended Complaint constitutes a governmental function. Since the plaintiffs' alleged property damages did not arise from the use of a motor vehicle or the use of motor-driven equipment, Little Elm is entitled to governmental immunity as to the plaintiffs' claim for negligent damage to property.

The Court notes, however, that the plaintiffs also attempt to seek mental anguish damages in their First Amended Complaint. The purported mental anguish arose from alleged property damage. The Texas courts have held that "mental anguish based solely on negligent property damage is not compensable as a matter of law." *Great Am. Ins. Co. v. Hamel*, 444 S.W.3d 780, 811 (Tex. App. 2014) (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 497 (Tex. 1997)). Furthermore, under Texas law, "there is no general duty not to negligently inflict emotional distress." *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). The plaintiffs have not alleged any bodily injury claims, gross negligence claims, or intentional tort claims in their First Amended Complaint. Since mental anguish damages cannot be recovered for negligent property damage, it is not necessary to further address the effect of the TTCA on plaintiffs' allegation of mental anguish. The plaintiffs have failed to state a plausible claim for relief for mental anguish. Therefore, the mental anguish claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## B. TAKINGS CLAIM

Governmental entities are generally not entitled to immunity for valid takings claims. *El Dorado Land Co., L.P. v. City of McKinney*, 395 S.W.3d 798, 801 (Tex. 2013); *City of El Paso v. Mazie's L.P.*, 408 S.W.3d 13, 19 (Tex. App. 2012). However, "[w]hen a plaintiff fails to allege a valid takings claim, governmental immunity continues to apply, and a trial court is without subject matter jurisdiction." *City of Carrollton v. Hamrla*, No. 02-15-00119-CV, 2016 WL 93031, at

*2 (Tex. App. Jan. 7, 2016) (quoting *Dahl ex rel. Rahl v. State*, 92 S.W.3d 856, 862 (Tex. App. 2002)). Therefore, the Court must address the validity of the plaintiffs' takings claims.

As for the plaintiffs' state takings claim,[7] the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art I, § 17. Therefore, a plaintiff must demonstrate: "(1) the State intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *Gen. Servs. Comm'n v. Little-Tex. Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001). "Mere negligence that eventually contributes to property damage does not amount to a taking." *Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 459 (Tex. App. 2008). Furthermore, "[a] failure to act, including a failure to take corrective measures, is not enough to rise to the level of taking; it is merely an allegation of negligent conduct." *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 196 (Tex. App. 2010).

The plaintiffs have not alleged any intentional act on the part of Little Elm. They merely allege that Little Elm acted negligently by failing to construct a

---

[7] It is not necessary for a state law takings claim to be prosecuted in state court, and this Court is permitted to exercise supplemental jurisdiction over the plaintiffs' state takings claim since federal question jurisdiction in this lawsuit was based on the Clean Water Act. *See* 33 U.S.C. § 1365(a); 28 U.S.C. §1367; *see also McClure v. Biesenbach*, 402 F. Supp. 2d 753, 759 (W.D. Tex. 2005) (holding that a federal district court could exercise supplemental jurisdiction over a state takings claim where federal question jurisdiction otherwise existed).

retaining wall to protect their properties.  Pursuant to Texas law, this is insufficient

to state a takings claim.  As a result, Little Elm is entitled to governmental

immunity as to the plaintiffs' state takings claim.

### C.  NUISANCE CLAIM

The Texas Court of Appeals has held:

> A nuisance claim can only be brought against a governmental entity if
> that nuisance rises to the level of a constitutional taking or unless
> governmental immunity is specifically waived by the Texas Tort
> Claims Act . . . .  Negligence contributing to damage to property does
> not constitute a taking.

*AN Collision Ctr.*, 310 S.W.3d at 194.  To the extent that the plaintiffs may be

asserting a negligent nuisance, Little Elm is entitled to governmental immunity for

the same reasons given *supra* with regard to the plaintiffs' negligence claims.  The

plaintiffs attempt to allege an intentional nuisance, but as explained previously,

there are no facts alleged against Little Elm in the plaintiffs' First Amended

Complaint that support these conclusory allegations.  Since the plaintiffs merely

allege that Little Elm has failed to build a retaining wall behind their properties,

Little Elm is entitled to governmental immunity as to the plaintiffs' nuisance claim.

## IV.  CLEAN WATER ACT CLAIM AGAINST LITTLE ELM

Little Elm also seeks dismissal of the plaintiffs' claims filed pursuant to the

Clean Water Act.  A citizen action cannot be filed pursuant to the Clean Water Act

"prior to sixty days after the plaintiff has given notice of the alleged violation (i) to

the Administrator [of the Environmental Protection Agency], (ii) to the State in

which the alleged violation occurs, and (iii) to any alleged violator of the standard,

limitation, or order . . . ." 33 U.S.C. § 1365(b)(1)(A). The plaintiffs in the present case claim that a petition they filed in a previous lawsuit against Little Elm satisfied the notice requirement. They also allege that an engineering study commissioned by Little Elm that discussed the erosion fulfilled the notice requirement.

As this Court previously explained in its Memorandum Opinion and Order [60] concerning other defendants, a previous lawsuit cannot fulfill the notice requirement under the Clean Water Act, because the very intent of the notice requirement is to *avoid* litigation where possible. *See Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1246 (3d Cir. 1995) (quoting *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 29 (1989)). A lawsuit could never reasonably be used as a means of preventing litigation. Furthermore, the engineering report could not have satisfied the notice requirement because it did not provide notice that the plaintiffs intended to file a lawsuit against Little Elm. *See Kendall v. Thaxton Rd. LLC*, 443 F. App'x 388, 392 (11th Cir. 2011) (holding that notice was insufficient where the notice letter did not mention the defendants "as possible defendants in a lawsuit brought pursuant to the CWA"). Finally, the plaintiffs do not dispute that they failed to provide notice to the EPA Administrator and the State of Texas. This failure in and of itself is a violation of the Clean Water Act notice requirement warranting dismissal of the plaintiffs' claims against Little Elm. *See Chute v. Montgomery Cty. Shooting Complex*, No. 3:12-CV-0776, 2013 WL 681987, at *4

(M.D. Tenn. Feb. 25, 2013). As a result, the plaintiffs' Clean Water Act claims filed against Little Elm must be dismissed without prejudice.

## V. FEDERAL STATE-CREATED DANGER CLAIM AGAINST LITTLE ELM

The Fifth Circuit has never recognized a state-created danger theory of recovery. *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012). Therefore, the plaintiffs' purported state-created danger claim against Little Elm must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## VI. FEDERAL TAKINGS CLAIM AGAINST LITTLE ELM

The plaintiffs attempt to allege a federal takings claim against Little Elm. The United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. amend V. This prohibition has been applied to the states pursuant to the Fourteenth Amendment. *Urban Dev. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006). However, no taking takes place absent an affirmative action on the part of the government. *Nicholson v. United States*, 77 Fed. Cl. 605, 620 (2007). The plaintiffs do not allege any affirmative act on the part of Little Elm; they merely allege a failure to act. As a result, the plaintiffs have not asserted a valid takings claim under the United States Constitution, and the plaintiffs' federal takings claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## VII. DECLARATORY RELIEF CLAIM AGAINST LITTLE ELM

Claims seeking declaratory relief are remedial in nature. *Stallings v.*

*CitiMortgage, Inc.*, 611 F. App'x 215, 218 (5th Cir. 2015).  When all other claims in a lawsuit have been dismissed, the Fifth Circuit has held that a court should also dismiss any request for declaratory relief.  *Id.*  Therefore, since no other claims remain pending, the plaintiffs' claims for declaratory relief must also be dismissed.

## VIII.  REQUEST FOR PERMISSION TO AMEND

The plaintiffs have requested permission to amend their complaint to assert that Frisco committed intentional acts and to correct any pleading deficiencies as to Little Elm.  However, the proposed amendment pertaining to Frisco would be barred by the doctrine of res judicata.  Furthermore, the plaintiffs have not demonstrated how an amendment could salvage their claims against Little Elm.  Finally, the fact that the plaintiffs have not been able to state a claim against any of these defendants after filing at least two lawsuits and at least eight amended complaints – six in the 2011 lawsuit and two in the present lawsuit – indicates that any amendment would be futile.

## CONCLUSION

For the foregoing reasons, all of the plaintiffs' claims against Highland Homes and Frisco are dismissed with prejudice pursuant to the doctrine of res judicata.  The plaintiffs' Clean Water Act claims against Little Elm are dismissed without prejudice for lack of notice.  The plaintiffs' negligence, state law takings, and nuisance claims against Little Elm are dismissed with prejudice pursuant to the doctrine of governmental immunity.  The plaintiffs' state-created danger, federal takings, and declaratory relief claims against Little Elm are dismissed

pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion to Dismiss [70] filed by the City of Little Elm is **GRANTED**. The plaintiffs' Clean Water Act claim against Little Elm is **DISMISSED WITHOUT PREJUDICE**. The remainder of the plaintiffs' claims against Little Elm are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Judgment on the Pleadings [71] filed by Highland Homes is **GRANTED**. The plaintiffs' nuisance and declaratory relief claims against Highland Homes are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion to Dismiss [82] filed by the City of Frisco is **GRANTED**. The plaintiffs' claims against Frisco are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that since all of the claims asserted in this lawsuit have now been dismissed, a separate judgment should be entered pursuant to Fed. R. Civ. P. 58.

**SO ORDERED AND ADJUDGED** this the 5th day of February, 2016.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE